**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

ANTONIO M. BREAKMAN, #83500 )
Plaintiff, )
v. )
STATE OF NEVADA, *et al.*, )
Defendants. )

3:10-cv-00633-ECR-VPC

**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**

September 13, 2012

This Report and Recommendation is made to the Honorable Edward C. Reed, Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendant's renewed motion for summary judgment (#52).[1] Plaintiff opposed (#62) and defendant replied (#63). The court has thoroughly reviewed the record and recommends that defendant's renewed motion for summary judgment (#52) be granted.

## I. HISTORY & PROCEDURAL BACKGROUND

Plaintiff Antonio Breakman ("plaintiff"), a *pro se* inmate, is incarcerated at Ely State Prison ("ESP") in the custody of the Nevada Department of Corrections ("NDOC") (#29). Plaintiff brings his civil rights complaint pursuant to 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical needs, in violation of his Eighth Amendment rights. *Id*. Defendant removed the case to federal court from the Seventh Judicial District Court for the State of Nevada (#1). Subsequently, the court screened plaintiff's first amended civil rights complaint and allowed plaintiff's Eighth Amendment claim to proceed against defendant Michael Koehn (#28).

Plaintiff claims that defendant, ESP doctor Michael B. Koehn, refused to provide proper

[1] Refers to the court's docket number. The court previously denied defendant's motion for summary judgment because his exhibits were not properly authenticated (#49, #51). The court granted defendant's motion for leave to file exhibit A-1 under seal, and exhibit A-1 has been filed accordingly (#54 *(sealed)*).

treatment for plaintiff's bleeding hemorrhoids. Plaintiff alleges that since April 2009, he has suffered from bleeding hemorrhoids, which cause excruciating pain and make it difficult to sit or sleep, and that he is "frail" from blood loss (#29, p. 3). Plaintiff asserts that defendant Koehn informed him that ESP would not pay for surgical removal of plaintiff's hemorrhoids and that surgery was unnecessary. *Id*. Plaintiff avers that the National Institute of Digestive Diseases has determined that surgery is "required" in hemorrhoid cases. *Id*. at 4. As such, plaintiff contends that defendant Koehn has acted with deliberate indifference to plaintiff's serious medical needs, in violation of plaintiff's Eighth Amendment rights.

Defendant Koehn filed his renewed motion for summary judgment on plaintiff's claim that defendant Koehn acted with deliberate indifference to plaintiff's serious medical needs (#52). Defendant Koehn argues that the court should grant summary judgment in his favor because he did not act with deliberate indifference to plaintiff's medical needs. *Id*. at 5. Defendant Koehn contends that his decision not to recommend plaintiff for surgery was not based on cost concerns, but solely upon his medical evaluation of plaintiff's hemorrhoids. Defendant Koehn agrees that surgery is a form of treatment, but asserts that surgery has risks and that most cases of hemorrhoids are treated with medication and/or diet change. Defendant Koehn's position is that in plaintiff's case, surgery may not result in the actual elimination of the hemorrhoid lesion, and may actually do more harm than good. *Id*. at Ex. A, pp. 3-4.[2]

Alternatively, defendant Koehn claims that even if his treatment decisions violated plaintiff's Eighth Amendment rights, he should be afforded qualified immunity, as his conduct under the circumstances was not unreasonable in light of pre-existing law and did not violate a clearly established statutory or constitutional right (#52, pp. 7-8).

In his opposition, plaintiff argues that defendant Koehn should have approved surgical removal of plaintiff's hemorrhoids; that defendant's failure to do so was cost-centered; and that these actions constituted a wanton disregard for plaintiff's pain. Plaintiff also argues that defendant Koehn

---

[2] In support of this argument, defendant Koehn has attached his declaration, Dr. Mar's declaration, and plaintiff's progress notes, authenticated by NDOC Health Information Coordinator Linda C. Maestes's declaration (#52, Exs. A & B; #54, Ex. A-1 (*sealed*)).

did not provide any documentary evidence demonstrating that surgery would not improve plaintiff's condition (#62).

The record indicates that plaintiff frequently visited the ESP medical unit for a variety of ailments. The court now summarizes the relevant treatment plaintiff received while at ESP.[3]

A. October 2, 2009: Plaintiff visited the ESP medical unit complained that his hemorrhoids were irritating him. ESP physicians diagnosed plaintiff with external hemorrhoids and prescribed hemorrhoid ointments and a fiber laxative (#52, Ex. A, p. 1; Ex. A-1, p. 15 (*sealed*)).

B: November 13, 2009: Plaintiff returned to the ESP medical unit, and complained of a blood-tinged stool. *Id.* ESP medical staff examined plaintiff, diagnosed him as having external/internal hemorrhoids, and prescribed hemorrhoid ointments and a fiber laxative. *Id.*

C: The first half of 2010: Plaintiff continued to visit the ESP medical unit, complaining that the prescribed ointment did not give him relief. Defendant Koehn examined plaintiff and diagnosed him as having external hemorrhoids. However, defendant Koehn did not see anything "that would register alarm." *Id.* at Ex. A, p. 1; Ex. A-1, p. 14.

D: August 13, 2010: Defendant Koehn scheduled plaintiff for an anoscopy, a procedure in which an optical scope is inserted into the patient's anal canal to determine whether the patient has internal hemorrhoids (#52, Ex. A, p. 2; Ex. A-1, p. 7 (*sealed*)).

E: September 16, 2010: Plaintiff was brought to ESP's trauma room for the anoscopy, but refused the procedure on the grounds that he was tired of "getting a finger up the butt." *Id.* at Ex. A, p. 2. Defendant Koehn explained that the anoscopy was necessary to determine whether plaintiff was suffering from internal hemorroids; however, plaintiff continued to refuse the procedure, and the anoscopy was not performed. *Id.*

F: November 17, 2010: Plaintiff was rescheduled for the anoscopy. However, on that date,

---

[3] ESP medical professionals treated plaintiff for his hemorrhoids on the following occasions: (1) October 2, 2009; (2) November 13, 2009; (3) January 5, 2010; (4) February 7, 2010; (5) April 11, 2010; (6) July 28, 2010; (7) August 13, 2010; (8) September 16, 2010; (9) November 17, 2010; (10) December 28, 2010; (11) January 4, 2011; (12) January 10, 2011; and (13) January 12, 2011 (#52, p. 2; Ex. A).

plaintiff had very high blood pressure, so defendant Koehn elected not to perform the procedure.[4] Defendant Koehn determined that plaintiff's high blood pressure was the likely cause of his hemorrhoids, and prescribed a blood pressure medication. *Id.* at Ex. A, p. 3; Ex. A-1, p. 7.

G: December 28, 2010: Defendant Koehn re-examined plaintiff, noted he still had several external hemorrhoids, and re-scheduled the anoscopy.

E: January 10, 2011: Defendant Koehn performed the anoscopy, but found "no significant lesions inside the rectal vault, and only a pair of external hemorrhoids" (#52, Ex. A, p. 3; Ex. A-1, p. 6 (*sealed*)). Thereafter, defendant Koehn referred plaintiff to NDOC senior physician Dr. Mar for a second opinion. *Id.* at Ex. A, p. 2.

F: January 11, 2011: Dr. Mar examined plaintiff to determine whether plaintiff had ulcerative proctitis, an inflammatory bowel disease, as a possible alternative diagnosis given that plaintiff's anoscopy yielded no significant findings. However, after the examination, Dr. Mar concluded that such a diagnosis was unlikely; and that plaintiff continues to suffer from external hemorrhoids. *Id.* at Ex. B, p. 1. Dr. Mar opined that plaintiff's treatment is adequate and surgery is not warranted at this time. *Id.* at Ex. B, p. 2.

As a preliminary matter, the court notes that plaintiff is proceeding *pro se*. "In civil rights cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II. LEGAL STANDARD & ANALYSIS

### A. Legal Standard

#### 1. Summary Judgment

Summary judgment allows courts to avoid unnecessary trials where no material factual disputes exist. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court will grant summary judgment if no genuine issues of material fact remain in dispute and

---

[4] Defendant Koehn avers that high blood pressure could cause blood vessels in the rectal area to burst (#52, Ex. A, p. 3; Ex. A-1, p. 7 (*sealed*)).

the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). However, the Supreme Court has noted:

> [W]e must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006). However, where reasonable minds could differ on a material fact at issue, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of informing the court of the basis for its motion, and submitting evidence which demonstrates the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson*, 477 U.S. at 248. Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

**B. Analysis - Eighth Amendment Deliberate Indifference to a Serious Medical Need**

Plaintiff alleges that defendant Koehn's failure to prescribe surgery constituted deliberate indifference to plaintiff's serious medical needs, in violation of plaintiff's Eighth Amendment rights. The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). A prisoner's claim of inadequate medical care arises under the Eighth Amendment. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986). To prevail on an action alleging cruel and unusual punishment, a plaintiff's case must satisfy an

objective standard – that the deprivation was serious enough to amount to cruel and unusual punishment; and a subjective standard – deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Wilson v. Seiter*, 501 U.S. 294, 297-304 (1991). A prison official violates the Eighth Amendment when he acts with deliberate indifference to an inmate's serious medical needs. *Farmer*, 511 U.S. at 834.

The objective requirement of a "serious medical need" is met if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. at 104). In this circuit, examples of serious medical needs include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citations omitted).

The subjective standard of deliberate indifference requires "more than ordinary lack of due care for the prisoner's interests or safety." *Farmer*, 511 U.S. at 835 (quoting *Whitley*, 475 U.S. at 319). The requisite state of mind lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Id.* at 836. To prove deliberate indifference, plaintiff must demonstrate that prison staff denied, delayed, or intentionally interfered with medical treatment, or that the way prison staff provided medical care indicated deliberate indifference; and that plaintiff sustained damages as a result of such conduct. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

Prison medical staff do not violate the Eighth Amendment simply because their opinion concerning medical treatment conflicts with the opinion of the inmate-patient. *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). In addition, a difference of opinion between medical professionals concerning the appropriate course of treatment generally does not amount to deliberate indifference to a serious medical need. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

However, a prisoner may establish that such a difference of opinion amounted to deliberate indifference where "the course of treatment the doctors chose was medically unacceptable under the circumstances," and such a course of treatment was chosen "in conscious disregard of an excessive risk to the prisoner's health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

Plaintiff alleges defendant Koehn engaged in deliberate indifference to plaintiff's serious medical needs by failing to properly treat plaintiff's hemorrhoids in a manner consistent with appropriate medical standards of care (#62, p. 3). Specifically, plaintiff contends that defendant Koehn should have approved surgical removal of plaintiff's hemorrhoids; instead, defendant Koehn ignored plaintiff's complaints and treated plaintiff with wanton disregard for plaintiff's pain. *Id*. at p. 7. Plaintiff also claims that defendant Koehn provided no documentary evidence to support his conclusion that surgery would not improve plaintiff's condition or that surgery posed too great a risk. *Id*. at p. 4. Plaintiff asserts that defendant Koehn's decision to withhold surgery was "cost centered" and alleges that defendant Koehn told him: "This is Ely. You'll get the bare minimum we have to provide, and I won't have you waste my tax dollars." *Id*. at p. 3. Plaintiff also asserts that Dr. Mar's second opinion was a "farce," as defendant Koehn and Dr. Mar work together and "have motive to falsely support each other." *Id*. at p. 4.

Plaintiff's medical record reveals that plaintiff first visited the ESP medical unit for his hemorrhoid complaints on October 2, 2009. At that time, ESP medical personnel diagnosed plaintiff with external hemorrhoids, and prescribed a hemorrhoid ointment and a fiber laxative (#52, Ex. A, p.1; Ex. A-1, p. 15 (*sealed*)). Thereafter, plaintiff visited ESP medical five times, complaining that the prescribed ointment did not give him relief. During these visits, defendant Koehn examined plaintiff, but did not see anything "that would register alarm." *Id*. at Ex. A, p. 1; Ex. A-1, pp. 14-15. On August 13, 2010, defendant Koehn scheduled an anoscopy to determine whether plaintiff had internal hemorrhoids. *Id*. at Ex. A, p.2; Ex. A-1, p. 7. However, Plaintiff refused the procedure. Thereafter, defendant Koehn scheduled a second anoscopy, but cancelled this procedure due to plaintiff's high blood pressure. *Id*. at Ex. A, pp. 2-3; Ex. A-1, p. 7. On December 28, 2010,

defendant Koehn re-examined plaintiff, and rescheduled the anoscopy. *Id*. at Ex. A, p.3; Ex. A-1, p. 6. On January 10, 2011, defendant Koehn performed the anoscopy, but found "no significant lesions inside the rectal vault, and only a pair of external hemorrhoids." *Id*. at Ex. A, p. 3; Ex. A-1, p. 6. Thereafter, Dr. Mar examined plaintiff to rule out a possible alternative diagnosis.

Defendant Koehn avers that plaintiff's hemorrhoid condition does not present a "sufficiently serious medical need" to satisfy the objective standard – that plaintiff's deprivation was serious enough to amount to cruel and unusual punishment (#52, p. 5). Even if the court assumes *arguendo* that plaintiff's hemorrhoids constitute a serious medical need, the court finds that defendant Koehn did not exhibit deliberate indifference to plaintiff's medical needs. The court finds no evidence which indicates defendant Koehn denied, delayed, or intentionally interfered with plaintiff's medical care. *See Hutchinson*, 838 F.2d at 394. Instead, plaintiff's progress notes reveal that defendant Koehn responded to plaintiff's requests for care, adequately examined plaintiff on multiple occasions, and even worked to reschedule plaintiff's anoscopy despite plaintiff's resistance to this procedure. *Id*. at Ex. A, pp. 2-3; Ex. A-1, p. 7. Further, when defendant Koehn did not find hemorrhoid lesions inside plaintiff's rectum, he asked Dr. Mar to examine plaintiff and plaintiff's records, so that Dr. Mar could provide a second opinion regarding plaintiff's diagnosis. *Id*. at Ex. A, p. 2.

Plaintiff alleges defendant Koehn's refusal to prescribe surgery for plaintiff's hemorrhoids was based on cost considerations; and is therefore, improper and a violation of plaintiff's Eighth Amendment rights. Plaintiff contends that defendant Koehn informed him: "This is Ely. You'll get the bare minimum we have to provide, and I won't have you waste my tax dollars" (#62, p. 3).[5] However, "[u]ncorroborated and self-serving testimony" without more, will not create a genuine

---

[5] In defendant Koehn's declaration, he states: "I gave no recommendation for Mr. Breakman to receive surgery for his hemorrhoids, but that decision was not based on cost concerns and instead solely on my medical evaluation of his condition; there are many other inmates in Ely State Prison with more serious hemorrhoids who do not merit surgery" (#52, Ex. A, p. 2).

issue of material fact precluding summary judgment. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). Plaintiff cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor*, 880 F.2d at 1045.

In addition, plaintiff's disagreement with defendant Koehn's course of treatment is not evidence of deliberate indifference. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Prison medical staff do not violate the Eighth Amendment simply because their opinion concerning medical treatment conflicts with the opinion of the inmate-patient. *Franklin*, 662 F.2d at 1344. Thus, a prisoner can only establish deliberate indifference if: "the course of treatment the doctor chose was medically unacceptable under the circumstances" and the treatment was chosen in "conscious disregard of an excessive risk to the prisoner's health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). The court finds that defendant Koehn's course of treatment was medically acceptable under the circumstances. Plaintiff has produced no evidence to suggest that defendant Koehn acted in conscious disregard to an excessive risk to plaintiff's health.

Accordingly, plaintiff's claim that defendant Koehn exercised deliberate indifference to plaintiff's serious medical need is contrary to the evidence before the court. Plaintiff has failed to demonstrate the existence of any material issues of fact. As a result, summary judgment should be granted in favor of defendant.[6]

## III. CONCLUSION

Based on the foregoing, and for good cause appearing, the court concludes that defendant Koehn has met his burden of proving that there are no genuine issues of material fact for trial. As such, the court recommends that defendant's renewed motion for summary judgment (#52) be **GRANTED** as to plaintiff's Eighth Amendment claim.

---

[6] Because the court recommends granting summary judgment based on plaintiff's failure to demonstrate that defendant acted with deliberate indifference, the court need not reach the issue of qualified immunity.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendant's motion for renewed summary judgment (#52) as to plaintiff's first amended complaint be **GRANTED** in its entirety.

**DATED**: September 13, 2012.

Valerie P. Cooke

**UNITED STATES MAGISTRATE JUDGE**